UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| RODNEY DOUGLAS JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:16-CV-55-SNLJ |
| ) | |
| CORIZON MEDCAL SERVICES, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff Rodney Jones's motion to depose (#55), motion to produce (#56), motion to amend the case management order (#61), and motion to pursue state-law claims through supplemental jurisdiction (#71). Defendants Eddie Hartline ("Nurse Hartline") and Mina Massey's ("Dr. Massey") motion for summary judgment (#65) is also before the Court. The matters are fully briefed. Summary judgment is granted in favor of both defendants.

**I.  Background[1]**

On January 12, 2014, Jones was involved in a physical altercation with his cellmate, and several other inmates attempted to break it up. After the altercation, he immediately assumed his hands were broken. Jones was in excruciating pain and wanted to seek medical attention. He did not for fear that the inmates who tried breaking up the

---

[1] The parties disagree on when Jones had a physical altercation with his cellmate and whether Jones was aggressive during Nurse Hartline's initial evaluation. Resolving all conflicts in Jones's favor, the Court recounts the relevant background facts as Jones describes them in his amended complaint and briefing.

1

fight would be punished when prison officials investigated the incident. Three days later, prison officials found out about the altercation and "locked everyone up involved . . . ." Then, Jones and his cellmate were being escorted to "medical" when Nurse Hartline intercepted the group. Nurse Hartline asked if anyone needed medical attention. Jones immediately responded, "Yes my hands are broken." Nurse Hartline told Jones to turn around (he was cuffed from behind) and wiggle his fingers. Jones did, and Nurse Hartline said Jones was "fine," clearing Jones for segregation custody. According to Jones, his hands were noticeably swollen at this time. Jones claims that Nurse Hartline intentionally deprived him of medical care because the two had unpleasant encounters in the past.

Later that day, Jones stopped a nurse who was making daily rounds in segregation. He told the nurse that his hands were broken and that he had a fever. The nurse diagnosed Jones with a flu virus and gave him Tylenol and antibiotics to treat the virus. She gave him an icepack for his swollen hands and requested that Jones's hands be reevaluated. The medical records show that flu symptoms, not broken hands, were the reason for Jones's complaint. He believes this record was altered but has no proof that it was.

Medical staff continued to treat Jones's flu-like symptoms over the next several days. In fact, he saw medical staff six more times over the next four days. Nothing in the medical records for these encounters shows that Jones complained about his hands. He makes only a passing comment that "the other nurses would not talk to [him] about his hands."

2

Eight days after entering segregation custody, Jones requested medical attention due to hand pain. A doctor examined him the same day and requested x-rays. The x-rays showed fractures in both hands, and Jones later had surgery to repair the fractures. He was admitted to the infirmary under Dr. Massey's care after surgery. Four days after the surgery, Dr. Massey noted in the medical records that Jones would be discharged from the infirmary when he was able to perform activities of daily living and was not taking narcotic pain medication. Eight days after the surgery, the medical records show that Jones was doing well and that Dr. Massey thought Jones might be discharged the following day. The same day, Jones was accused of stealing another inmate's food. The next day, nine days after surgery, Jones was discharged from the infirmary. The medical records show that he was able to perform activities of daily living and was not taking narcotic pain medication. Dr. Massey also issued "layins," or restrictions, when discharging Jones: Jones was restricted to bedrest for a month, and his meals were to be brought to medical, among other things. Contrary to the medical records, Jones claims that Dr. Massey actually discharged him as punishment for his alleged stealing. He claims he was never told of his layins or given a paper copy to show correctional officers. Thus, he was discharged while unable to care for or defend himself.

Jones had a second surgery on his left index finger in July 2014. Fifteen days after the surgery, Nurse Hartline was told to remove Jones's sutures. Nurse Hartline asked a correctional officer to cut the sutures while Nurse Hartline pulled. Jones claims the procedure was very painful, but there were no other complications at that time. The next day, the wound reopened, and a nurse had to apply Steri-Strips to close it.

Jones now brings suit *pro se* and alleges that Nurse Hartline violated his Eighth Amendment right in denying Jones access to medical care during Nurse Hartline's pre-segregation evaluation. Jones also claims that Nurse Hartline violated his Eighth Amendment right when removing Jones's sutures after the second surgery. Finally, Jones argues that Dr. Massey violated his Eighth Amendment right by discharging him from the infirmary because Jones allegedly stole another inmate's food.

## II.   Legal Standard

Pursuant to Federal Rule of Civil Procedure 56, a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *City of Mt. Pleasant v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the Court must review the facts in the light most favorable to the party opposing the motion and must give that party the benefit of any inferences that logically can be drawn from those facts. *N. States Power*

*Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1053 (8th Cir. 2004). The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

### III. Discussion[2]

Jones has an Eighth Amendment right not to have known, objectively serious medical needs disregarded by prison officials. *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976). "For a violation, [Jones] must show '(1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Fourte v. Faulkner Cty.*, 746 F.3d 384, 387 (8th Cir. 2014) (second and third alterations in original) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)). The first element is objective, the second subjective. *Jolly*, 205 F.3d at 1096.

"A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Fourte*, 746 F.3d at 388 (*quoting Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). "Deliberate indifference may include intentionally

---

[2] Nurse Hartline and Dr. Massey make two technical arguments that the Court rejects. First, they argue that "[Jones] does not dispute any material fact"; thus, "[their] statement of uncontroverted material facts should be deemed admitted." (#77 at 1). Although Jones did not comply perfectly with Local Rule 7-4.01(E), this Court does not consider that technicality to be fatal. Jones makes clear what facts he disputes. Other courts have also refused to find a technical violation of the local rules to be fatal. *See, e.g.*, *Wright v. S. Ark. Reg'l Health Ctr., Inc.*, 800 F.2d 199, 204 n.3 (8th Cir. 1986). Second, Nurse Hartline and Dr. Massey argue that Jones has not offered any admissible evidence or testimony because his statements—and many of Jones's arguments rely heavily on his firsthand account of the events—were not given under oath. But Jones made many of his statements in writing, under penalty of perjury (#78 at 7). This has the same effect as a sworn declaration or affidavit. 28 U.S.C. § 1746. So both arguments fail.

5

denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Pietrafeso v. Lawrence Cty.*, 452 F.3d 978, 983 (8th Cir. 2006) (*quoting Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995)). "Deliberate indifference is 'more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Fourte*, 746 F.3d at 387 (*quoting Jolly*, 205 F.3d at 1096). "A prison official is deliberately indifferent to a prisoner's serious medical needs *only if* he is 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Pietrafeso*, 452 F.3d at 984 (emphasis added) (*quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

The Court will address each defendant[3] separately.

### A. Nurse Hartline

Jones claims that Nurse Hartline violated Jones's Eighth Amendment right during the pre-segregation evaluation and when she removed his sutures.

#### 1. Pre-Segregation Evaluation

Jones seems to advance two theories that allegedly show Nurse Hartline violated his Eighth Amendment right during the pre-segregation evaluation.

First, Jones claims that Nurse Hartline was deliberately indifferent to Jones's serious medical need by intentionally denying Jones access to medical care during the pre-segregation assessment. To succeed, Jones must show his statement "my hands are

---

[3] Jones initially sued six defendants. At this point in the litigation, Nurse Hartline and Dr. Massey are the only defendants remaining.

broken" and the obvious swelling of his hands are evidence of a serious medical need, and that by clearing Jones for segregation custody, Nurse Hartline deliberately disregarded that need. Even if Jones's hands presented a serious medical need, *see Robinson v. Moreland*, 655 F.2d 887, 890 (8th Cir. 1981), he must show that Nurse Hartline was "aware of facts from which the inference could be drawn that a *substantial risk of serious harm exists*, and [that Nurse Hartline drew] the inference.'" *Pietrafeso*, 452 F.3d at 984 (emphasis added) (*quoting Farmer*, 511 U.S. at 837). There is no evidence in the record that supports the claim that Jones's hands presented a substantial risk of harm—which is required for Jones to show deliberate indifference—when Nurse Hartline first evaluated Jones.

Turning to the record, Jones had already tolerated his condition for two days without seeking medical attention before Nurse Hartline's initial evaluation. This suggests there was no risk of serious harm during Nurse Hartline's evaluation. Dr. Massey believes that Jones's evaluation and treatment, including Nurse Hartline's evaluation, were appropriate. This also suggests there was no risk of serious harm during Nurse Hartline's evaluation. Had Jones's condition worsened, Nurse Hartline explained the procedures Jones should follow to request medical attention while in segregation. Jones does not dispute that he was given these instructions. The same day of Nurse Hartline's evaluation, Jones stopped a different nurse who was making daily rounds in segregation. He told the nurse that his hands were broken and that he had a fever. She diagnosed Jones with having a flu virus. The nurse treated his swollen hands only by giving Jones an icepack and requesting a reevaluation.

Jones does not argue that the second nurse's treatment was inappropriate and violated his Eighth Amendment right. Taken to its logical conclusion, Jones is arguing that his hands presented a substantial risk of harm, and Nurse Hartline was deliberately indifferent by not providing an icepack[4] and further evaluation (presumably by a health professional other than a registered nurse who makes rounds in segregation). A substantial risk of serious harm surely requires more treatment than an icepack, so this argument fails. And the claim that Nurse Hartline should have referred Jones for further evaluation is really a delayed-treatment argument. As explained below, any delayed-treatment argument fails. Finally, Jones was seen by medical staff six more times before he requested assistance for his hands. Nothing in the medical records for these six visits shows that Jones complained about his hands. His offhand statement that "other nurses would not talk to [him] about his hands" (#74 at 11) is not sufficient to create a genuine issue of material fact in light of the other evidence in the record.

To the extent that Jones disagrees with Nurse Hartline's treatment decision, or lack thereof, that does not rise to the level of a constitutional violation. *Fourte*, 746 F.3d at 387. Nurse Hartline was not deliberately indifferent to Jones's serious medical need by clearing him for segregation custody without further medical assistance.

Second, Jones claims that Nurse Hartline was deliberately indifferent to Jones's serious medical needs by delaying his access to medical care. Specifically, Jones alleges, "If Nurse Hartline had done his job appropriately . . . plaintiff would've seen a doctor sooner, hands would've been x-rayed sooner, infection would've been detected sooner,

---

[4] All other treatment the nurse provided was intended to treat Jones's flu-like symptoms.

8

would've been admitted to the infirmary sooner and ultimately had surgery sooner." (#74 at 11).

"[W]hen the inmate alleges that the delay in treatment is the constitutional deprivation, the objective seriousness of the deprivation should also be measured 'by reference to the *effect* of delay in treatment.'" *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (*quoting Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir.1994)), *overruled on other grounds as recognized in Langford v. Norris*, 614 F.3d 445 (8th Cir. 2010). That is, an inmate making a delayed-treatment argument must present "'verifying medical evidence' that defendants 'ignored an acute or escalating situation or that delays adversely affected his prognosis, given the type of injury in this case.'" *Id.* (*first quoting Hill*, 40 F.3d at 1188; *and then quoting Sherrer v. Stephens*, 50 F.3d 496, 497 (8th Cir. 1995)).

Jones does not argue that Nurse Hartline ignored an acute or escalating situation. He argues only that, "[b]ecause of the long delay[,] Plaintiff[']s hands had to be refractured on February 17, 2014, in order to be repaired." (#74 at 12). But the only verified medical evidence that comes close to supporting Jones's theory is a note in a medical record that a doctor was "definite[ly] concerned given it [the fractures] is now 2 weeks old." (#66-2 at 18). This does not verify that Jones's hands were refractured because of delayed access to medical treatment. In fact, Jones's hands were also refractured before his third surgery, but Jones does not claim this refracturing was due to delayed medical treatment.

9

Nurse Hartline was not deliberately indifferent to Jones's medical needs by delaying Jones's access to medical care.

### 2. Suture Removal

Jones also argues that Nurse Hartline was deliberately indifferent when removing Jones's sutures. Specifically, Jones claims that Nurse Hartline asked a correctional officer to cut the sutures while Nurse Hartline pulled them. The next day, the wound reopened. Jones speculates that "[i]t is more likely than not that this was a result of a non-medical professional performing this procedure with very sharp and dangerous instruments that could have very well been worse." (#78 at 4). Yet there is no evidence that Nurse Hartline was deliberately indifferent in performing this procedure. In fact, except for pain that Jones experienced during the suture removal, there were no complications during the procedure. It wasn't until later the next day that the wound reopened. Jones does not claim that Hartline intentionally caused him pain while removing the sutures. Instead, Jones seems to attack Hartline's decision to enlist the help of a correctional officer. Perhaps this was negligent, but it did not rise to the level of deliberate indifference. And Nurse Hartline removed the sutures because a doctor told him to. At worst, he botched the procedure, causing the wound to reopen the next day. But there still is no evidence that Nurse Hartline was deliberately indifferent.

### B. Dr. Massey

Jones claims that Dr. Massey was deliberately indifferent to his serious medical needs when she discharged him from the infirmary because he stole another inmate's

food. At this stage is his recovery, Jones argues, he was unable to properly care for and defend himself in general population.

The medical records show that Jones was doing well the day before he was discharged. Dr. Massey noted that Jones might be released the next day if he was taken off his pain medication because Jones was able to do more with his hands. The next day (the day he was discharged), Jones told a nurse that his pain level was zero on a zero-to-ten scale. In fact, he requested nail clippers to trim his nails that day. The records show that Jones was able to perform his activities of daily living without assistance. He was taken off narcotics, and Dr. Massey discharged him with the following restrictions: "write layins for 1 month for bedrest up for counts only, have meals brought to medical, D/C T3 pain medication, ibuprofen 600mg tab 1 tab PO Q6hrs PRN X 30 days." (#66-2 at 96).

In this context, Dr. Massey's decision to discharge Jones was not "so inappropriate as to evidence intentional maltreatment." *Fourte*, 746 F.3d at 387 (*quoting Smith v. Jenkins*, 919 F.2d 90, 92 (8th Cir. 1990)). It would cast serious doubt on Dr. Massey's medical judgment—possibly rising to medical malpractice or gross negligence—if she discharged Jones from the infirmary because he stole another's inmate's food. But based on Jones's progress as shown in the medical records, as well as the layins that Dr. Massey ordered, Jones's discharge does not amount to deliberate indifference—whatever the reason for his discharge. Patients are not kept in the infirmary unless they medically need to be there. And sometimes, patients with limitations or ongoing issues are released to the general population with layins.

11

Assuming one or more of Dr. Massey's layins violated internal policy, again, that perhaps shows she was negligent. But the Eighth Amendment does not prohibit even gross negligence, *Fourte*, 746 F.3d at 387, or malpractice. *Estelle*, 429 U.S. at 106. Even if Dr. Massey failed to give Jones a copy of the layins, there is no evidence in the record (other than Jones's subjective allegations) that she purposefully failed to do so to punish Jones. Based on this evidence, Jones's subjective allegations do not create a genuine issue of material fact. *See Moore ex rel. Moore v. Briggs*, 381 F.3d 771, 774 (8th Cir. 2004). There is simply no evidence outside the allegations to support Jones's claim that he left the infirmary unable to defend or care for himself, especially in light of the layins that Dr. Massey ordered. The evidence shows that he was pain free and clipping his fingernails the day he was discharged, and the layins would of course help Jones perform other activities of daily living.

Lastly, Jones claims—for the first time—in his sur-reply[5] that Dr. Massey discharged him from the infirmary without paper copies of his layins after his second surgery. The Court rejects this argument because the Federal Rules of Civil Procedure "do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment." *N. States Power Co.*, 358 F.3d at 1057.

**IV.     Conclusion**

---

[5] Jones did not file a motion seeking leave to file his sur-reply, *see* E.D. Mo. L.R. 7-4.01(C), but the Court still considered it.

Summary judgment will be granted in favor of Nurse Hartline and Dr. Massey. The court declines to exercise supplemental jurisdiction over Jones's state-law claims. 28 U.S.C. § 1364(c).

Accordingly,

**IT IS HEREBY ORDERED** that defendants Nurse Hartline and Dr. Massey's motion for summary judgment (#65) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff Jones's motion to depose (#55), motion to produce (#56), and motion to amend the case management order (#61) are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff Jones's motion to pursue state-law claims through supplemental jurisdiction (#71) is **DENIED**.

So ordered this  28th  day of November, 2017.

                STEPHEN N. LIMBAUGH, JR.
                UNITED STATES DISTRICT JUDGE